**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**                                     **Criminal Action No. 2:05cr44**

**RODNEY T. HILL,**

        **Defendant.**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter is before the court following a bench trial on the government's charges against the defendant, Rodney T. Hill, for Driving After Being Declared an Habitual Offender, Third Offense, in violation of 18 U.S.C. 7 & 13, assimilating 46.2 Virginia Code § 357(B)(3), and Driving While License Suspended or Revoked, Sixth Offense, in violation of 18 U.S.C. 7 & 13 and 50 C.F.R. 27.31(a), assimilating 46.2 Virginia Code § 301.  At the conclusion of trial, this court deferred a finding in order to do further research. On September 28, 2005, the defendant, his counsel, and the Special Assistant United States Attorney returned to the court, and the court found the defendant guilty on both counts of the indictment. These findings of fact and conclusions of law were prepared in order to explain the court's reasoning in this matter.

**I.   FINDINGS OF FACT**

Little Creek Amphibious Base is a military installation located in Virginia Beach, Virginia. Gate Four, one of the entrances to the base, is located on Nider Boulevard near the intersection of

Nider and Shore Drive. The strip of Nider Boulevard between Shore Drive and Gate Four, several hundred yards in length, is owned and maintained by the base, yet remains completely open to the public.  However, in order to go through Gate Four and enter the base, a person must be granted access by presenting a photo identification to the guard at the sentry post at the gate. The entrance to Boone Branch Medical Clinic ("Boone Clinic") is also located on the strip of Nider Boulevard between Shore Drive and Gate Four. The public may access the entrance to Boone Clinic from Nider Boulevard without restriction.

On the day of the incident involved in this case, a sign posted on the fence to the right of Gate Four read:

>  WELCOME
>  PLEASE NOTE
> - No weapons allowed
> - Military working dog on patrol
> - All persons and vehicles may be searched
> - All subject to regulations 50 USC 797

Next to this sign, on the same fence, another sign read: "NO TRESPASSING".  A sign posted on a stand at Gate Four also stated: "STOP - 100% ID CARD CHECK IN PROGRESS   HAVE ID READY".

On August 10, 2004, at approximately 8:35 am, Bryan Ainsworth, a civil police officer employed at Little Creek Amphibious Base was manning the sentry post at Gate Four when he observed the defendant in the driver's seat of a vehicle approaching the gate. When the defendant's vehicle reached the check point at Gate Four, Officer Ainsworth stopped the defendant and asked him for his identification. The defendant, who was employed by a contractor working on the base, showed Officer Ainsworth an identification card. However, when Officer Ainsworth asked the

defendant for his driver's license, the defendant said that he had left it at home in his other pants.

Officer Ainsworth ran a DMV check on the defendant, but before receiving the report, he asked the defendant if the check would show that his license was suspended. The defendant responded affirmatively and explained that the revocation was based on substantial fines that he was in the process of paying. He further stated that the matter would be resolved by December. The DMV report confirmed that the defendant's license was revoked. Subsequently, Officer Ainsworth issued the defendant a citation, denied him access to the base, and released him into the custody of the defendant's employer.

At the time of the incident described above, the defendant had already been declared an habitual offender, convicted of driving a motor vehicle after being declared an habitual offender three prior times, and convicted of driving on a suspended license five times prior to the instant offense. Furthermore, the defendant had notice of his habitual offender status and the prior convictions.

On March 24, 2005, the defendant was indicted on the following two counts: Count One: Driving After Being Declared an Habitual Offender, Third Offense, in violation of 18 U.S.C. 7 & 13, assimilating 46.2 Virginia Code 357(B)(3), and Count Two: Driving While License Suspended or Revoked, Sixth Offense, in violation of 18 U.S.C. 7 & 13 and 50 C.F.R. 27.31(a), assimilating 46.2 Virginia Code 301.

The defendant argues that he is not guilty of these charges because he was not driving on a "highway" pursuant to United States v. Smith, 395 F.3d 516 (4th Cir. 2005). Specifically, the defendant contends that the part of Nider Boulevard on which he was apprehended is not a "highway" because it is not a public road under Smith. However, the government argues that

because that portion of Nider Boulevard is unrestricted to public access, it is a "highway" under Virginia law. Thus, the issue before this court is whether the portion of Nider Boulevard between Shore Drive and Gate Four of Little Creek Amphibious Base constitutes a "highway" as defined by the Virginia Code.

## II. CONCLUSIONS OF LAW

The relevant portions of the Virginia statutes under which the defendant is charged state the following:

> It shall be unlawful for any person determined or adjudicated an habitual offender to drive any motor vehicle or self-propelled machinery or equipment on the *highways* of the Commonwealth while the revocation of the person's driving privilege remains in effect.

Va. Code § 46.2-357(A) (emphasis added).

> [N]o resident or nonresident . . . whose driver's license, learner's permit, or privilege to drive a motor vehicle has been suspended or revoked . . . shall thereafter drive any motor vehicle or any self-propelled machinery or equipment on any *highway* in the Commonwealth until the period of such suspension or revocation has terminated or the privilege has been reinstated.

Va. Code § 46.2-301(B) (emphasis added).

In order to be convicted under these statutes, a person must be driving on a "highway" under Virginia law. A "highway" is defined, in relevant part, as "the entire width between the boundary lines of every way or place *open to the use of the public for purposes of vehicular travel* in the Commonwealth, including the streets and alleys . . . ." Va. Code § 46.2-100 (emphasis added).

In <u>United States v. Smith</u>, 395 F.3d 516 (4th Cir. 2005), the defendant, after discovering that he was lost, drove to a call box on the CIA access road outside the main gate to the CIA headquarters in McLean, Virginia. <u>Id.</u> at 517. An officer directed the defendant to pull up to the barrier, which was

approximately 75 meters in the direction of the gate. Id. Upon reaching the barrier, two armed officers yelled at the defendant and his passengers to put their hands up. Id. at 517-18. An officer proceeded to ask the defendant for identification. Id. at 518. However, the officer discovered, among other illegal activity, that the defendant's license had been suspended. Id. The defendant was subsequently convicted of driving with a suspended license, in addition to other various crimes.

The Fourth Circuit reversed the defendant's conviction for driving with a suspended license based on its finding that the CIA access road was not a "highway" under Virginia law. The court of appeals explained that the CIA access road has signs posted along it that specifically state that "only CIA employees and those with authorized business may enter CIA property." Id. at 520. (citations omitted). Thus, "[b]ecause the general public is not permitted on the access road, it is not 'open to the use of the public for purposes of vehicular travel'" as required by the statutory definition of the word "highway." Id. at 520 (quoting Va. Code § 46.2-100); see also Flinchum v. Commonwealth of Virginia, 24 Va. App. 734 (1997)(holding that a road is not a highway if it is not "open to the public at all times"); Furman v. Call, 234 Va. 437, 439 (1987) ("Thus, the test for determining whether a way is a 'highway' depends upon the degree to which the way is open to public use for vehicular traffic.").

The defendant, in the instant case, contends that Nider Boulevard, like the CIA access road in Smith, is not a public road, and therefore, not a highway under Virginia law. However, Smith is distinguishable from the defendant's case in that the public was specifically prohibited from using the CIA access road at issue in that case. Unlike the CIA access road, Nider Boulevard has no such prohibitions and, in fact, is intended to be used by the public to access Boone Clinic. Hence, the court rejects the defendant's argument and finds that the instant case is more analogous to United

States v. Spencer, No. 05-206 (E.D.Va. filed July 26, 2005) and Coleman v. Commonwealth, 16 Va. App. 747 (Va. Ct. App. 1993).

In Spencer, the defendant was charged with operating a motor vehicle on a highway while her driving privileges were suspended and operating a motor vehicle on a highway without a valid operator's license. Id. at 1. The defendant was apprehended while driving down J.J. Kingman Road towards the gate to Fort Belvoir in Northern Virginia. At the gate, a sign read:

> J.J. Kingman Gate
> Open 7 Days a Week
> 0500-2200
> Non-Decal Vehicles Must Register
> 100% ID Check
> After Hours Use Pence Gate

Id. at 2.

The defendant was stopped at the gate pursuant to the military police's authority to restrict access to the base. Id. at 1. When the officer manning the gate determined that the defendant's license had been suspended, he issued her a citation. Id. at 1-2.

Initially, the magistrate judge dismissed the charges against the defendant on the basis that J.J. Kingman Road was not a "highway" under Virginia law. Id. at 1. However, the district court reversed the magistrate judge finding that the road is a public "highway" as defined by section 46.2-100 of the Virginia Code. Id. at 7. The court explains:

> Public access is allowed during daytime hours. The Fort Belvoir signs simply alert drivers that they must register at the gate and produce identification. If they are not on the restricted list, then they will be allowed to continue to travel on J.J. Kingman Road. . . . [The road] is open to the public whether they have business, official or unofficial, in Fort Belvoir or are simply driving through the area.

Id. at 6.

In <u>Coleman</u>, one of the cases on which the court based its <u>Spencer</u> opinion, the Virginia Court of Appeals upheld the defendant's conviction for driving after being declared an habitual offender when he drove on a road within the Defense General Supply Center, which is a federal enclave in Chesterfield County. <u>Coleman</u>, 16 Va. App. at 748.  Finding that the road leading to the Defense General Supply Center was not a private road, but a "highway" under Virginia law, the court stated:

> Access through the rear gate is unlimited when that gate is open. Access through the front gate is subject only to the minimal limitation of checking in and out those vehicles that do not display registration decals. That minimal restriction in no way constitutes an appropriation of the property to private use. The roads are maintained by the United States Government for the use of those traveling them on government business or simply for the purpose of going on or through the enclave. Nothing in the arrangement justifies denying to those travelers the protection of Virginia's public safety highway laws.

<u>Id.</u> at 749-50.

This court finds that the road in the instant case is also a public road, like the roads in <u>Spencer</u> and <u>Coleman</u>. Although the section of Nider Boulevard between Shore Drive and Gate Four is owned and operated by the government, it is completely open to public access. As Officer Ainsworth testified, any person, without restriction, is allowed to proceed down Nider Boulevard up to the check point and then turn around in the cut through of the median. Furthermore, any person visiting Boone Clinic may travel on Nider Boulevard to access the entrance and parking lot to the clinic. Thus, the court finds that the portion of Nider Boulevard on which the defendant was driving is a public road, and hence, a "highway" within the meaning of the Code. Therefore, the defendant is guilty of driving after being declared an habitual offender, third offense, and driving while his license was suspended or revoked, sixth offense, as determined by this court on September 28, 2005.

The Clerk is **REQUESTED** to send a copy of this Opinion to counsel of record and to the Probation Office.

It is so **ORDERED.**

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

October 3rd, 2005
Norfolk, Virginia